My name is Andrea Waters. I'm appearing on behalf of Manuel Lopez. With the Court's permission, I would like to reserve my rebuttal time, please. The issue in this case is whether or not, under the Arizona Civil Rights Act, my client, in this decision, is that the Federal court, in granting summary judgment and determining that my client had failed to exhaust his administrative remedies, relied on Federal law and deferred entirely to Title VII. And there's two issues that I wanted to bring to the Court's attention. Is Arizona law significantly different on exhaustion of administrative remedies? Well, there isn't an Arizona case that specifically says when an ACRD claim is exhausted, what constitutes exhaustion of those remedies. And that's why, when I looked at the statute, the statute under Arizona law sets forth some pretty specific guidelines as to when the ACRD has exclusive jurisdiction and what constitutes the proper filing of a charge. And in looking at that statute, 41-1481, under ARS regulations, excuse me, the — there's a 90-day time period, Your Honor, and during that 90-day time period, the court, the ACRD, excuse me, has exclusive jurisdiction to take a look at this case. And what prompts that is two steps. One is that the person alleging that they've been discriminated against must contact the ACRD, which is a preliminary phone interview. And then the ACRD makes a decision at that time if they're going to set up an actual sit-down time with the complainant. And the complainant can show up at that time, set forth any documents they have, and they complete the initial charge of discrimination. That triggers the running of the 90 days. And subsequent to that, and under the Arizona Administrative Code, Title 10, Chapter 3, Article 2, they set forth all the procedures that the ACRD can go through. Everything in it is permissive in the sense of what the parties must do, except for the obligation of the charging party to file that initial charge of discrimination. And the — Can the complainant file an action in Arizona Superior Court after the 90 days has run? Yes. So in that respect, it's no different than Federal law, is it? Well, except that — Other than the time period is different. The time period is distinct, and this portion is distinct, which I think is the case, which is it specifically states under Arizona law that at the end of 90 days, the charging party, the offended person, has the right to go directly to court. And that's distinct, I think, from the Title VII statutes, because it says at this point in time, here's the end of your 90 days, you can go request your right to sue and take your claim directly to court. And that, I think, is a distinction. And in that regard, I think Arizona law is different. They haven't set forth any other requirements. Yes, Your Honor. Getting — using about a lot of your time, so what difference does it make which law it is? Well — How did he fail to exhaust? Here's the — they allege he failed to exhaust because he did not follow through with an interview that the ACRD office was trying to set up many months outside of the 90-day period. So that's — your answer is, then, that the State didn't do anything within the 90-day period? Correct. During that 90 days, if they had set up interviews for him and he'd failed to show during that 90-day period, then I think he would have failed to exhaust his administrative remedies. If he failed to participate in good faith — because I don't think you can sidestep that there's a good faith requirement for everyone to participate in due diligence. But I think the 90-day time period set forth in the statute implies when that good faith participation failure to exhaust would be triggered, is in that 90 days set forth in the statute. And I think that's why the legislature set forth the 90 days. Why didn't you make inquiries of the ACRD on behalf of your client once you were retained to sort of find out what the status was of this thing? This was one of the craziest situations in that I was in communication with the ACRD office, which is set forth in the record. There's letters and communication with them. It just was one of those — and this is part of my argument. I think this is a question of fact on the client's good faith portion. It was one of those strange situations where the client had given the correct information on the charge as to his mailing address, but everyone, including myself, interpreted that to be a post office box, a U.S. post office box, rather than a mailboxes, et cetera, box. No communication with your client then during that period? I'm sorry. Let me interrupt you. While you were talking to the ACRD? That is correct. I was trying to locate my client in the same guise that they were. And in fact, you can see that the mailing is an issue in the record. They even at one time, the ACRD, sent a notice meant for my client to defense counsel who sent a letter to the ACRD saying, hey, this isn't for me. This was actually for a charging party. I think there's a mistake. There were just — it was a mailing mess. And that's the other part of my question, my position to the court is I think that creates a question of fact. Even if this court is inclined to say that the 90 days isn't a limiting time period under the statute, my client has created a question of fact as to what his good faith obligation was. As a matter of law, once you entered a notice of appearance on your behalf, why wouldn't notice to you be deemed to be binding notice to your client? Well, I think that notice to me does constitute some notice to the client. I agree with you there. I mean, there's no question about that. But I think that once the court and everyone else was made aware of the fact that even during this time period, we aren't able to get our hands on this guy. You didn't make an appearance, though, in the case until December the 5th. Isn't that correct? That's true, Your Honor. That's when you first notified. And when did the 90-day period expire? Well, the charge of discrimination was filed in August. And I'm trying to take a look here. In August. And I know it's in the record, Judge, I just don't have the actual I thought it was September 17th is what my note was. Between December 5th and December 17th, did the ACRD send you any letters, any communications? Between, excuse me, between September Between December 5th when you appeared Yes. And December 17th when the 90-day period expired, was there any communication to you or to your client from the ACR, whatever it's called, the American The ACRD. No, there was not. Just my notice of appearance to the ACRD, Your Honor. Thank you. You have two and a half minutes if you wanted to save for rebuttal. I think I'll save that for rebuttal. Thank you, Your Honor. Unless you have any other questions for me this time. May it please the Court, my name is Laurent Badu and I represent the Produce Exchange. To answer a couple of questions, let me first clarify a point. We're not talking about 90 days in this case. We are talking about 180 days as the investigative period. The reason is we are talking about two agencies, the Arizona Civil Rights Agency and the Arizona Equal Employment Opportunity Commission, that have a work share arrangement. So you're claiming that the violation occurred in the Federal part of the claim, the EEOC, that that's where it was, failure to exhaust with the EEOC? Well, Judge, when I think of it from the standpoint of, if you will, subrogation of the role of the EEOC by the ACRD, they share in the investigative role, and the EEOC takes a notice that the ACRD would handle its investigation, which is the work share agreement, and that's 180 days for the EEOC to conduct its investigation. So the ACRD really had 180 days. But that's what they did within the 180 days, or what they did within the 180 days. First and foremost, there was a mediation process that was initiated. The plaintiff did receive notice of the charging party, did receive notice of that, and did not respond to it. That delayed the process. They received what notice? Did what? Notice of the mediation process of the ACRD. They asked to come to mediation? An offer to go to mediation. An offer? That's correct. Okay. But he wasn't asked to do anything. Was it a ---- I mean, was he told, come here, come to mediation, do this? No. He was asked whether he was ---- He said he failed to do, that he was required to do. What was it? First and foremost, to respond to that request. When a claimant is asked, a claimant has the option to agree or the option to disagree, to not go to mediation. The charging party decided ---- Did the letter say that somebody would contact him? No, Your Honor. I mean, he received correspondence. Is that the letter, September 20th? I believe that's correct, yes. That's the first one. That letter doesn't say someone will contact you? Well, there's an effort to contact him. It also provides ---- It's probable to arrange for the mediation, yes. Yeah. Also, he has ---- No, but they didn't. Well, the correspondence was going to the right address. The only one that seems to have been returned in the file is the final correspondence from June of 2001. As you'll notice in that letter, the address is properly stated in it. I'm trying to find out what was sent to him that he failed to comply with. You know, saying someone will contact you does not mean you failed to exhaust your remedies. Well, first and foremost, he never responded to it one way or the other. The second thing is ---- Why? Hmm? So what? Well, I think there is an option to actually participate in the process. There's an option. Is that a failure to exhaust? I believe it is, because there's a possibility, as you yourself noted, for a litigant in a case, if there's a possible outcome, a possible remedy, the party should try to exhaust that particular avenue, and we should not make light of the fact that a potential remedy ---- Even without the letter, he could have gone to their door every day and said there are all kinds of things you can do for me. He could have. That would have been diligence on his part to contact the ACRB. It would have been very good of him to do that, yes. But it wouldn't have been a failure to exhaust for him not to. If he had participated in the process, of course it would not have been a failure to exhaust. If he didn't go to the door every day and say there are things you have available ---- Okay. I'm not following you. I'm sorry. Also, what about the fact that he got a right to sue letter from the EEOC? Well, as this Court noted in Jash v. Potter, when a claimant actually forces the agency to enter a dismissal for failure to cooperate, that party essentially has forced the hand of the agency. What you're seeing here from the appellant is an effort to essentially reconsider the decision of the ACRB as far as its decision to dismiss the case of failure to cooperate. That standard is very hard. That's an abuse of discretion standard, and there is virtually no fact in the record that would actually support this Court overturning the decision of the ACRB. What decision of the ACRB would we have to overturn? The decision that he failed to cooperate with the process. Where is that decision? Well, that's part of the ---- you were referring to the closure, the administrative closure of the file by the Arizona Civil Rights Division. Their determination is that Mr. Lopez failed to cooperate, and this is a ---- their case is filed as a closed file for failure, a dismissal for failure to cooperate. That's an administrative agency's decision. That can only be reviewed on an abuse of discretion standard. There isn't in this record any evidence that would allow this Court to meet the standard. But as you said, they were engaged in a joint enterprise with the EEOC. They were acting on behalf. It was a shared project, and the EEOC then said he had a right to sue. The EEOC reached the same conclusion that the Arizona Civil Rights Division did. It gave ---- But they didn't find it a failure to exhaust. They found that he had a right to sue. And are you familiar with Corder v. Smith, Food King? Yes, Your Honor. And doesn't that say that if you have a right to sue letter, that bars the claim of failure to exhaust? Well, yes and no. I mean, it depends on what the ultimate decision is by the agency. I think the case that is more on point is Chast v. Potter, and specifically what the finding is in that particular case. In Chast v. Potter, this Court essentially made a decision on behalf of the agency that the claimant had not failed to exhaust his remedies, even though the EEOC had found ---- I just entered a straight-up dismissal or a straight-up closure of the file without a finding that the person had failed, the claimant had failed to cooperate. In this case, we are right in the dicta of what Chast v. Potter actually suggests, in that the claimant has forced the hand of the agency to issue that failure to cooperate dismissal. And therefore, they have failed to exhaust the administrative remedy because they did not cooperate with the agency. And a big difference, I think, you know, Judge Talman's question goes right to the core of this situation. What difference does it make if we're under Arizona law or under Federal law? None. We end up back in a very same situation. And there is no case law interpreting this particular case. I understand your argument, Mr. Badot. The only failure on the part of Mr. Lopez during the 180-day time period was he didn't respond to what I assume is a standard letter that goes out as soon as the charge is filed that says are you interested in participating in mediation. So how do you get around our decision in Charles v. Garrett in which we say that the failure to cooperate, if it occurs after the statutory period, doesn't matter? Those are completely different cases. Charles v. Garrett is a situation of an actual employee of the Federal Government, where the difference that you have in that particular case — So you're trying to confine the rule to cases only involving government employees? But that 180-day rule in that particular kind of case is based on the fact that it is initially the agency that's under investigation, the alleged discriminator, that actually handles the initial administrative phase. So in order for the litigant not to be caught in a charybdis and scylla indefinitely, there is a 180-day rule that's built in so that there needs to be an administrative decision. And what you have also in that particular case is afterwards a 30-day rule for the EOC who handles the appeal only, not the actual administration of the charge, to actually proceed with the charge and for the party to then file its lawsuit. They're very different cases because they're based on a completely different administrative system. What we have here is vastly different than that. As you pointed out, I mean, the party is represented by counsel. What the party is asking for is equitable tooling. But you cannot have equitable tooling when you're not proceeding pro se. In addition, there is no misrepresentation that's being made by the Arizona Civil Rights Division. All they're trying to do is to get some information from Mr. Lopez and from counsel from Mr. Lopez. And counsel cannot argue, and I think nobody is arguing, that counsel is the agency that holds the questions. What information did they ask for in the September 20th letter? I'm sorry, Judge Fitts. Can you repeat that? What information did they ask for in the September 20th letter? The September 20th letter is, if my recollection is correct, solely about the participation in the mediation process to which this matter pertains. What other letter did they send to him where they were asking for information? They sent a request for scheduling a post-statement of position interview of the judge. Where was that? That's from March, I believe, of 2002. March from 2002? Correct. And I think that the interview was set in April. Could you point in the record to me where that letter is? I'm not sure exactly whether it is actually in the record or whether you're referring to ---- I'm asking you, which letter did they send to him where they asked for specific information? And you just told me there was a letter in March. Where in the record is that letter? I believe if you look to, I think it's excerpt of record 12 on the appellee's brief, you'll see that there's a notation in the communication, the log, essentially, that Ms. Macias, the investigator, I see that my time has expired. May I finish answering your question? Yes, please do. That Ms. Macias, the investigator, actually had in there, it shows, and I may be mistaken by the date, could be March or April. Big difference between March and April. There is a big difference. Are you not ---- are you thinking of the April letter? That's right. That's when the ---- well, there's a request that is being passed down at that particular point. There's a letter in your excerpt of record, at least according to the index, there's a letter from December, there's a letter from January, and there's a letter from April 2nd. Now, if you're talking about the letter from April 2nd, that's ---- we need to know that. That is the one. April 2nd is when the request for the investigation is. The 180 days ended on March 17th, right? I apologize, Your Honor. The 180 days ended on March 17th? That is correct. So this was after the 180-day period. And again, as I was mentioning to Judge Tallman, that would not necessarily be a material fact in this particular case, because we are not talking about a situation where the party, after 180 days, made a request for a notice of right to sue. The party then proceeded, contacted the very day after ---- the very day of receipt of that particular letter, contacted the agency to find out where the actual meeting would be set up, would it be at the agency or at counsel's office, and then blew that meeting, was a no-call, no-show, when that investigation actually, that investigatory meeting was scheduled to take place. Well, that's so true if it's relevant, because as you know, counsel had the same problem the agency had and everyone else had, that the individual gave the right address and nobody could tell the difference between a P.O. box and a whatever it is. But so you ---- so we understand why he didn't go. But that's not relevant unless it was an obligation. And I think until the party decides not to avail itself of the process by requesting a notice of right to sue, that party is still bound by the procedures of the agency. And that's exactly where we find ourselves. I agree. Thank you. Thank you. I'll just be very brief. The one issue was the ---- that the Court asked about was this letter sent in September asking Mr. Lopez to appear for mediation. And I wanted to direct the Court to defense counsel's letter dated January 18th, 2002, which is Exhibit 7 in the record to affilies, excuse me, excerpts of record. And that's the letter wherein defense counsel writes to the ACRD saying, your September 20th notice that you meant to send to Mr. Lopez, in fact, came to me. So it's obvious that Mr. Lopez at that point hadn't received that letter. What was happening to the letters that were being sent to Postal Express or postal mailboxes or whatever? Not U.S. Post Office, but commercial mail facilities. Right. In fact, there is record in here that they were returned. And that is what's in the record from the ACRD notes. They're just being returned. And, in fact, I attached that copy to my affidavit that it came back as undeliverable as well. And that's really all I wanted to add. Thank you, counsel. The case just argued will be submitted. The next case for argument is Romero v. Evans.
judges: Reinhardt, Paez, Tallman